# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ERIC J. HARTMANN, )
)
        Plaintiff, )
)
vs. ) Civil No. 17-cv-001-JPG-CJP
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Defendant.[1] )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Eric J. Hartmann seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in January 2013, alleging that he became disabled as of January 13, 2012. After holding an evidentiary hearing, ALJ Stuart T. Janney denied the application on September 10, 2015. (Tr. 20-34.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Through counsel, plaintiff makes the following arguments:

1. The hypothetical question posed to the vocational expert (VE) was too vague and did not include all of the limitations contained in the residual functional capacity (RFC) assessment.
2. The RFC assessment was not supported by substantial evidence.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## **Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

> not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) ([u]nder the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that the Commissioner made no mistakes of law. This scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). While judicial review is deferential, however, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Janney followed the five-step analytical framework described above. He determined that Mr. Hartmann was insured for DIB through March 31, 2017, and that he had not engaged in substantial gainful employment since the alleged date of disability.[3] He found that plaintiff had severe impairments of lumbar spine degenerative disc disease with post-laminectomy syndrome, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the RFC to perform work at the light exertional level with a number of physical limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was not able to do his past relevant work. He was, however, not disabled because he was able to do other jobs which, according to the VE's testimony, exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the arguments raised by plaintiff.

**1. Agency Forms**

---

[3] The date last insured is relevant only to the claim for DIB.

Plaintiff was born in 1965. (Tr. 216.) He alleged that he was disabled because of a herniated disc and that he was "unable to walk." (Tr. 219.) In October 2013, plaintiff stated that he had back surgery because of a herniated disc at L4-5, but he still had numbness down both legs and daily chronic pain. (Tr. 262.) He had worked as a car salesman from 1993 through January 2012. (Tr. 220.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in August 2015. (Tr. 43.)

Plaintiff testified that he had pain in his low back with numbness radiating into his legs. (Tr. 52–53.) He took morphine for pain relief. He had injections for back pain but they did not relieve his pain. He also took Gabapentin for headaches. (Tr. 53–55.)

Following plaintiff's testimony, a vocational expert (VE) testified. The ALJ asked the VE to assume a person with the following RFC:

> "[A]n individual [who] could perform the physical exertional demands of light work. However, there's one exception to that, please consider that the individual could only occasionally use the bilateral lower extremities to push or pull to operate foot controls on an occasional basis, but still within the weight tolerances of light work. Just wouldn't be able to do it frequently or for more. Please consider that the individual could, according to the state agency assessment, could occasionally climb, that included ramps, stairs, ladders, ropes, scaffolding. Please consider that the individual could occasionally balance, stoop, kneel, crouch, and crawl."

(Tr. 67.) The VE testified that this person could not do plaintiff's past work. However, he could do other jobs such as cafeteria attendant, cashier II, and mail clerk. (Tr. 67-68.) Plaintiff's counsel asked no questions of the VE. (Tr. 70.)

3. **Medical Records**

5

Plaintiff went to the emergency room following a fall on ice at work in January 2012. He complained of pain in his neck, low back, head, and right elbow. (Tr. 323–327.)

Plaintiff saw Dr. Peter Mirkin, an orthopedic surgeon, in July 2012. Dr. Mirkin diagnosed a disc protrusion/bulge at L4-5 with possible annular lesion. Following a diagnostic discogram, Dr. Mirkin recommended surgical decompression and fusion. (Tr. 403, 405–406.) Surgery was performed on October 16, 2012. (Tr. 411–412.) About two weeks later, he was doing very well. He was fitted for a brace and bone stimulator. X-rays showed good positon of the hardware and a "maturing fusion." (Tr. 402.) In January 2013, he reported that he had slipped and developed pain in his back. On exam, he had mild tenderness but was neurologically intact. His hardware was in good position. Dr. Mirkin recommended physical therapy. (Tr. 399.) In March 2013, plaintiff complained of pain in his left buttock. He walked with an upright gait and his range of motion was 90 percent of normal. Straight leg raising was negative. (Tr. 397.)

A CT scan of the lumbar spine in February 2013 showed hardware in satisfactory position and no disc bulge or herniation at any level. There was mild residual central canal stenosis and mild residual bilateral foraminal stenosis. (Tr. 440.)

Plaintiff began seeing a pain control specialist, Dr. Richard Gahn, on a referral from a chiropractor in March 2013. On the first visit, sensation was normal and strength was full in the lower extremities. Straight leg raising was painful on both sides. Dr. Gahn diagnosed postlaminectomy syndrome. He gave plaintiff some injections and prescribed Elavil and Hydrocodone. (Tr. 420–423.) Dr. Gahn administered lumbar epidural steroid injections in April and May, 2013. (Tr. 456–459.)

The orthopedic surgeon, Dr. Mirkin, discharged plaintiff from his care on May 15, 2013.

On exam, plaintiff walked with an upright gait and range of motion was 75 percent of normal. Straight leg raising was negative. X-rays showed good position of the hardware. Dr. Mirkin said he was medically stable and encouraged him to exercise. (Tr. 517.)

On June 11, 2013, plaintiff told Dr. Gahn that he had improvement in his symptoms but still had pain in the left low back region aggravated with prolonged sitting or driving. He was taking Hydrocodone intermittently. On exam, he had pain on extension and flexion. There was no lumbar facet joint tenderness to compression. Straight leg raising was negative. Sensation and strength in the lower extremities was normal. Dr. Gahn administered trigger point injections in the left lumbar paraspinal muscles. (Tr. 459–461.)

Plaintiff was examined by Dr. Volarich for purposes of his workers' compensation claim in November 2013. On exam, plaintiff walked with a slight limp. He had reduced range of motion of the lumbar spine. Straight leg raising was limited to 45 degrees bilaterally "where he stopped because of back and buttocks pain." Sensation was normal. (Tr. 504–515.)

Plaintiff's workers' compensation claim was resolved in December 2013. His permanent disability was rated at 60 percent of the body as a whole. (Tr. 214–215.)

In July 2014, plaintiff told his primary care physician, Dr. Pickett that his back had "started hurting out of nowhere last week." On exam, he was well appearing and in no distress. Straight leg raising caused pain. Dr. Pickett prescribed Norco. (Tr. 601–603.)

Plaintiff began treatment at the offices of Comprehensive Pain Specialists on a referral from his primary care physician in August 2014. He was seen by Jennifer Middendorf, an advanced practice registered nurse. He complained of low back pain radiating into his legs. On exam, his lumbosacral range of motion was moderately limited. His gait was normal. His

7

straight leg raising was positive bilaterally. His sensation in the lower extremities was intact. The doctor diagnosed failed-back syndrome. She prescribed medications including Norco. (Tr. 575–576.) He came in for medication refills in November and December 2014. No positive physical findings were reported. (Tr. 561–564.)

Plaintiff saw Nurse Middendorf for medication refills in January, March, and May 2015. She noted opioid dependence and changed his medications. No positive findings were noted on exam. She described plaintiff as being in no apparent distress. The neurologic exam was normal. Plaintiff told her that his medications gave him improvements in function, activities of daily living and quality of life. (Tr. 475–478, 545–547, 551–553.)

## **Analysis**

Plaintiff first argues that the ALJ erred by asking the VE to assume a person who could do light work without specifying which definition of "light work" he was using. According to plaintiff, light work is defined differently in the *Dictionary of Occupational Titles* compared to the social security regulations.

This argument is completely without merit. 20 C.F.R. § 404.1567 provides that the term "light work" as used in the regulations has "the same meaning" as it does in the DOT. Plaintiff sets forth the DOT definition and the regulatory definition at page 8 of his brief. There is no substantive difference between the two.

Plaintiff also argues that the RFC assessment included limitations that were not included in the hypothetical question posed to the VE. He is incorrect. The hypothetical question posited a person who "could perform the physical exertional demands of light work," limited to only occasional use of the bilateral lower extremities to push or pull to operate foot controls; occasional

8

climbing of ramps, stairs, ladders, ropes, and scaffolding; and occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 67.) The RFC assessment set forth in the written decision contains the same limitations. (Tr. 26.)

Plaintiff makes the erroneous argument that the written RFC assessment provides that he "would need to alternate positions" because it limited him to no more than 6 hours of sitting, standing, or walking. This argument assumes that light work requires sitting, standing, or walking for 7 out of 8 hours. This is incorrect. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *5.

Plaintiff has not demonstrated that the hypothetical question was vague or that it materially differed from the written RFC assessment. Therefore, his first argument fails.

For his second point, plaintiff argues that the RFC assessment was not supported by substantial evidence because the "only specific evidence" cited by the ALJ was the opinions of two state agency consultants. Plaintiff points out that those two opinions were from May and November 2013, and the state agency consultants did not have the benefit of later treatment notes and Dr. Volarich's opinion.

This argument fails as well. The ALJ clearly stated at Tr. 32 that his RFC assessment was supported by a wealth of evidence, including, as relevant to his back condition, "physical exams that consistently showed no deficits in gait, motor strength, sensation, or reflexes," as well as his activities of daily living. Plaintiff does not dispute that the physical exams referred to by the ALJ and his activities of daily living support the RFC assessment.

Ignoring the actual language of the written RFC assessment, plaintiff argues that it is error

9

for an ALJ to rely "solely" on stale medical opinions. The ALJ did not rely "solely" on the state agency consultants' opinions, however, to support his RFC assessment. Further, plaintiff's argument that the state agency consultants' opinions were lacking because they did not have access to Dr. Volarich's opinion has no traction. The ALJ gave no weight to Dr. Volarich's opinion (Tr. 31), and plaintiff has not argued that he erred in doing so.

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). ALJ Janney's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Janney committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Eric J. Hartmann's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:   September 25, 2017**

s/ *J. Phil Gilbert*
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
